UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| KELLER FARMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16CV265 ACL |
| | ) | |
| McGARITY FLYING SERVICE, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the Motion to Dismiss of Stewart Defendants. (Doc. 42.) Plaintiff has filed a Memorandum in Opposition (Doc. 47) and a Motion for Leave to Amend Complaint (Doc. 48), to which the Stewart Defendants have filed a Reply (Doc. 50). The parties have also filed a Joint Motion for Continuance of Deadlines in Amended Scheduling Order. (Doc. 55.)

**I.**     **Background[1]**

Plaintiff Keller Farms is an Illinois corporation that owns and operates farmland on Route 77 in Benton, Missouri (the "Property"). In the First Amended Complaint, Plaintiff states that, at the beginning of the 2015 growing season, Keller Farms had planted 897 acres of wheat, 100 acres of sweet corn, and 99 acres of horseradish on the Property. Keller Farms also had a sycamore tree farm, and numerous other additional trees and foliage for windbreak and ornamental purposes.

Defendant Dennis E. McGarity was licensed by the Missouri Department of Agriculture ("MDOA") as a commercial applicator. Plaintiff states that McGarity was acting within the

---

[1]The Court's summary of the facts is taken from Plaintiff's First Amended Complaint. (Doc. 28.)

1

course and scope of his affiliation with Defendant McGarity Flying Service, LLC.

Defendant Michael C. Pemberton[2] was licensed by the MDOA as a private applicator. Plaintiff alleges that Pemberton was an agent or employee of the Defendants Kenny C. Hulshof and Renee L. Hulshof ("Hulshof Defendants"), and was acting in the course and scope of his employment or agency with the Hulshof Defendants.

Defendants Colin V. Stewart, Brandon G. Stewart, and Faron B. Stewart ("Stewart Defendants"), d/b/a Stewco Farms, hired the McGarity Defendants to perform the aerial broadcast of herbicides.

Plaintiff alleges that, on April 23, 2015, Defendant McGarity applied Clarifer herbicide, Afforia herbicide and Roundup Powermax II via aerial application to 303 acres of farmland situated to the northeast of the Property. Plaintiff claims that these pesticide chemicals drifted with the wind and landed on the Property.

Plaintiff alleges that, on May 13, 2015, Defendant Pemberton applied Defy Amine 4 and Warrant Herbicide to 262 acres of farmland situated to the south of the Property, and that these chemicals drifted with the wind and landed on the Property.

Plaintiff states that the MDOA, through the Bureau of Pesticide Control, investigated the wind drift damage to the Property, collected samples of damaged trees and crops from the Property, and subsequently issued letters of warning to Defendants dated February 3, 2016.

Plaintiff claims that it suffered the following damages: 897.22 acres of wheat were damaged resulting in lost sales in the approximate amount of $114,016; 30,000 bags of corn were unable to be sold totaling lost damages in the approximate amount of $500,000; 11.5 acres of the horseradish crop were damaged, causing lost sales in the approximate amount of $19,174;

---

[2] Michael C. Pemberton has since been dismissed as a party in this action due to his discharge in bankruptcy. (Doc. 54.)

the ornamental trees on the Property were damaged, resulting in a loss of value of $317,882; trees on the Property that serve a vital windbreak function were damaged, including 319 dead sycamore trees and 42 dead pine trees, resulting in a repair and replacement estimate of approximately $180,500; and lost business relations and business reputation with one of its major purchasers due to being unable to fill 2015 purchase orders from pesticide damaged corn.

In Count I, Plaintiff asserts a negligence per se claim against all Defendants, claiming that Keller Farms sustained damage to the Property as a result of Defendants' misuse of pesticide in violation of Missouri statutes and regulations. In Count II of the Complaint, Plaintiff alleges that Defendants were negligent in applying the chemicals and pesticides listed above, which resulted in damage sustained to the Property. In Count III, Plaintiff asserts a claim for trespass and treble damages based on Defendants' application of pesticides and chemicals on the Property.

In their Motion to Dismiss, the Stewart Defendants argue that Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted because the Stewart Defendants cannot be held vicariously liable for the actions of the McGarity Defendants. Specifically, the Stewart Defendants contend that the "inherently dangerous activity" exception to the general rule that a party is not liable for the tortious conduct of an independent contractor does not apply in this case.

Plaintiff responds that it has properly stated a claim against the Stewart Defendants. Plaintiff also requests leave to file its Second Amended Complaint, which alleges in the alterative that the McGarity Defendants were not merely independent contractors of the Stewarts, but that the Stewarts exercised sufficient control over their activities to constitute a master/servant relationship.

In their Reply, the Stewart Defendants maintain that the inherently dangerous activity exception does not apply in this case, and argue that the Stewart Defendants should be dismissed from this lawsuit if that is Plaintiff's only basis for liability. The Stewart Defendants request that, in the event the Court grants Plaintiff's Motion for Leave to Amend Complaint, the Court strike Paragraph 11(alleging the inherently dangerous exception).

## II.     Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

## III.    Discussion

As previously noted, the Stewart Defendants argue that the "Inherently Dangerous Activity" exception is not applicable as a basis to hold the Stewart Defendants liable for the actions of the McGarity Defendants.

At issue is the following allegation in Plaintiff's First Amended Complaint:

4

> 11. At all pertinent times mentioned herein, the Stewart Defendants d/b/a Stewco Farms hired the McGarity Defendants to perform an inherently dangerous activity, i.e. the aerial broadcast of herbicides. The Stewart Defendants are vicariously liable for the actions of the McGarity Defendants for commissioning the activities of the McGarity Defendants. The harm to Plaintiff Keller Farms resulted from the McGarity Defendants failing to take precautions to prevent harm which the Stewart Defendants contemplated or should have contemplated at the time of hiring.

(Doc. 28 at p. 3.)

The rule at common law is that one who contracts with an independent contractor is generally not liable for bodily harm for the torts of the contractor or the contractor's servants. *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384, 384 (Mo. banc 1991). "The rationale for this exception is that because the landowner has no right of control over the manner in which the work is done by an independent contractor, its duty of care shifts to the independent contractor, and the latter becomes the party required to bear the responsibility for any injuries." *Gillespie v. St. Joseph Light & Power Co.*, 937 S.W.2d 373, 376 (Mo. App. W.D. 1996) (citing *Zueck*, 809 S.W.2d at 386). However, the inherently dangerous activity exception states that, "a landowner remains liable for injuries to innocent third parties if the plaintiff can show that the landowner has directed the contractor to perform an act which is dangerous to others." *Id.* (quoting *Salmon v. Kansas City*, 145 S.W. 16 (1912)).

The Stewart Defendants, relying on *Lonero v. Dillick*, 208 S.W.3d 323, 330 (Mo. Ct. App. 2006), argue that the inherently dangerous exception does not apply in this case because Plaintiff did not suffer physical or bodily injuries.

In *Lonero*, a pedestrian struck by a vehicle driven by a newspaper delivery person brought an action against the owners and distributor of the newspaper. 208 S.W.3d at 325. Lonero argued that the defendants were liable for the harm caused by the independent contractor driver's tortious act under the inherently dangerous activity exception. *Id.* at 329. Lonero did

not argue that his physical injuries resulted from the allegedly inherently dangerous activity of delivering newspapers and did not seek damages for his physical injuries. *Id.* at 330. Rather, he alleged an "economic injury-the 'loss of opportunity' to recover money damages" under the driver's insurance policy due to Defendants' failure to assure the driver was insured. *Id.* The court affirmed the trial court's grant of summary judgment in favor of Defendants, holding that the inherently dangerous activity exception "does not apply when the injured party has not alleged that he suffered physical or bodily harm." *Id.*

Plaintiff argues that the holding in *Lonero* does not apply in the instant case because Plaintiff is alleging physical injuries: physical damage to growing crops and trees.

The court in *Lonero* stated as follows:

All Missouri caselaw applying the inherently dangerous activity exception has applied it in cases where the injured party suffered **physical or bodily injuries**. *See, e.g., Bowles,* 41 S.W.3d at 21-22 (carbon monoxide poisoning); *Hatch v. V.P. Fair Foundation, Inc.,* 990 S.W.2d 126, 131 (Mo. App. E.D.1999) (back, legs, and shoulder injuries); *Sullivan,* 770 S.W.2d at 353 (head injuries). Again, the parties did not provide, and we could not find, any Missouri case that applied this exception to circumstances where the injured party suffered only economic loss.

208 S.W.3d at 330 (emphasis added). The court did not define "physical or bodily injuries."

The undersigned finds that *Lonero* does not preclude liability in this case. The facts of *Lonero* are distinguishable from the instant case in that there was no question in *Lonero* that the injury allegedly resulting from the inherently dangerous activity—the loss of the opportunity to collect insurance coverage—was not "physical or bodily" but was merely economic. In this case, however, Plaintiff claims that the McGarity Defendants' performance of the inherently dangerous activity resulted in damage to growing crops and ornamental trees, and the complete destruction of 319 sycamore trees and 42 pine trees.

Notably, the Stewart Defendants do not dispute that crop dusting is an inherently dangerous activity. While it is true that Missouri courts applying the inherently dangerous

activity exception have all involved bodily injuries, there is nothing in *Lonero* or any other Missouri authority foreclosing its application to cases involving physical injury to personal property. The fact that Plaintiff is seeking money damages for the physical harm is of no consequence, as money damages are the appropriate remedy even in cases involving personal or bodily injuries. Because Plaintiff's claim that the Stewart Defendants are vicariously liable for the McGarity Defendants' negligence under the inherently dangerous activity exception is plausible on its face, the Stewart Defendants' Motion to Dismiss will be denied.

Plaintiff has also requested leave to file a Second Amended Complaint alleging the following additional legal basis for a claim against the Stewart Defendants:

> 12. In the alternative to the allegations [in] Paragraph 11, the Stewart Defendants d/b/a Stewco Farms exercised such a degree of control over the activities of the McGarity Defendants so as to create a master/servant relationship between the Stewart Defendants and the McGarity Defendants. Thus, the Stewart Defendants are vicariously liable for the actions of the McGarity Defendants.

(Doc. 48-1 at 3.)

Motions to amend pleadings are governed by Rule 15(a) of the Federal Rules of Civil Procedure. *See Lexington Ins. Co. v. S & N Display Fireworks, Inc.*, 2011 WL 5330744, at *2 (E.D. Mo. Nov. 7, 2011). Under Rule 15(a), leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this liberal standard, denial of leave to amend pleadings is appropriate only if "there are compelling reasons such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the nonmoving party, or futility of the amendment." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008).

In this case, Plaintiff's motion to amend was filed within the period for the amendment of pleadings set out by the Case Management Order, and Defendants do not object to the filing of

7

the Second Amended Complaint. The Stewart Defendants ask that the Court strike Paragraph 11 of the Second Amended Complaint—the provision alleging the application of the inherently dangerous activity exception—so that they are not required to file a second motion to dismiss this claim.

The Court will grant Plaintiff's Motion for Leave to Amend Complaint. Because the Court has denied Defendants' Motion to Dismiss, Defendants' request to strike Paragraph 11 of the Second Amended Complaint will also be denied.

Finally, the parties' joint motion to extend certain deadlines set forth in the Amended Scheduling Order will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss of Stewart Defendants (Doc. 42) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Amend Complaint (Doc. 48) is **granted**.

**IT IS FURTHER ORDERED** that the parties' Joint Motion for Continuance of Deadlines in Amended Scheduling Order is **granted**. A Second Amended Case Management Order will issue on this date.

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of December, 2017.